IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DOROTHY LYNN HENDERSON | § | |
| v. | § | CIVIL ACTION NO. 6:10cv354 |
| LUMINANT MINING SERVICES CO. ENERGY FUTURE HOLDINGS CORP. | § | |

MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Plaintiff filed the above-styled lawsuit on July 19, 2010 seeking relief pursuant to Title VII of the Civil Rights Act of 1964. On December 9, 2010, the case was transferred to the undersigned with the consent of the parties in accordance with 28 U.S.C. § 636. Defendants filed a Motion for Summary Judgment (document #111) on April 4, 2011. Plaintiff's deadline to respond was April 26, 2011. To date, no response has been filed by Plaintiff. For the reasons assigned below, the undersigned finds that Defendants' Motion for Summary Judgment should be granted.

*Background*

In her complaint, Plaintiff states that she was hired on September 18, 2008 at Luminant Mining as Administrative Support to the Operations staff. She alleges that she was discriminated against due to her race. Plaintiff asserts that she was not provided reasonable training or the same wages, as compared to white administrative support staff. She states, for example, that she only received one day of training, but was required to train a new white employee for one month. Plaintiff

complains that the white employee she trained was later promoted to a position Plaintiff wanted. She submits that she was also retaliated against for contacting Human Resources and no investigation was done in response to her complaints. Plaintiff alleges that she took a medical leave and had to wait a few weeks to be paid until she reached her one-year anniversary with the company. She also alleges that she was harassed when she returned to work. Plaintiff's employment was terminated on February 11, 2010.

Defendants filed a Motion for Summary Judgment on April 4, 2011. Defendants' summary judgment evidence shows that Plaintiff was hired by Luminant on September 8, 2008 to fill a newly created position as an Administrative Assistant at the Beckville Mine. Plaintiff's job duties included collecting and reporting shift productivity information. The Operations Manager, Jeff Noble, was Plaintiff's direct supervisor. Energy Future Holdings Corp. ("EFH") is an indirect parent corporation of Luminant.

Plaintiff received one week of training at the Luminant Academy in Tyler before she reported to the mine for work, which was standard for new hires. She also received one-on-one training from various co-workers, which included several days of training by Amanda Gann who previously performed some of the reporting duties assigned to Plaintiff. Because her position was newly created, there was not a predecessor employee in the position to train Plaintiff. Plaintiff received information from various employees and her supervisor was available by phone or email. During the course of her employment, Plaintiff was afforded the opportunity to take training courses intended to develop administrative skills.

A second Administrative Assistant, Sue Brooks, was hired a few months after Plaintiff, in December 2008. Brooks' salary was the same as Plaintifff's starting salary, but Plaintiff then

received a merit pay increase in February 2009 that Brooks did not receive. Plaintiff's supervisor asked her to train Brooks on administrative tasks. Subsequently, a position for Administrative Assistant to Mine Manager Curt Lightle was posted on the mine's internal job posting site. Brooks applied for and received the position in July 2009. The change in position was a lateral move with the same pay and job title. Plaintiff did not submit an application. After Brooks was hired for the position, Plaintiff complained to her supervisor and to Human Resources that she was interested in the position. Another Luminant employee hired around the same time as Plaintiff, Charity Jacobs, filled the Administrative Assistant position vacated by Brooks.

Beginning in the spring of 2009, Noble observed deficiencies in Plaintiff's work in areas such as accuracy and timeliness. According to Noble, Plaintiff did not accurately complete the overtime, hauler and end dump reports and the dragline delay and the dozer idle time charts. Similarly, he observed Plaintiff repeatedly putting incorrect information into the equipment allocation database, failing to include all forms in foremen packets and failing to prioritize her work, such that work was left undone at the end of Plaintiff's shift and/or at the end of her seven-day run.

Noble counseled Plaintiff over a period of time and eventually documented his concerns. On July 23, 2009, Noble put a handwritten note in Plaintiff's personnel file stating that Plaintiff failed to input the Supervisor Safety Audit Sheet between July 18, 2009 and July 22, 2009. As a result, Brooks had to enter the information for her. A week later on July 30, 2009, Noble included another note stating that Plaintiff posted a "WPMT" chart on the shift change board that had incorrect information. Plaintiff was instructed to double-check her work before posting it. In an undated memo, Terry McFadden, B Area Superintendent, complained that Plaintiff failed to include reports

in the foremen's packet on August 1, 2009. Without reports, the foremen had to guess at the day's work, which could lead to errors in reporting.

Noble conducted Plaintiff's mid-year performance review on August 5, 2009 and gave her an overall rating of "Needs Improvement." On August 7, 2009, two Schedulers at the Mine – Brett Richter and Brian Crawford – sent Noble a memo citing concerns about Plaintiff's work performance. They complained that Plaintiff routinely put incorrect information on the daily goal bar charts and entered incorrect information into the database that tracks the hours worked and the yards moved during the past week. Plaintiff's errors caused other workers to be taken away from their duties so that they could double check Plaintiff's entries and make corrections. In addition, errors were found in a variety of other reports that depended upon data entered by Plaintiff. Plaintiff's errors caused inaccurate reports. Richter sent another message to Noble on August 24, 2009, documenting more data entry errors by Plaintiff.

During the same month, Plaintiff complained to Christina Mitchell, a Human Resources professional, that a foreman came to her office asking for staples in July 2009, and made a comment about having guns. Plaintiff also complained that employees were discussing racoon hunting near her work space. Ms. Mitchell investigated Plaintiff's complaint and determined that the employee only asked Plaintiff for staples for a staple gun. She also determined that the conversations concerning hunting were inappropriate for the workplace.

In late August 2009, Plaintiff took medical leave to seek mental health treatment. Plaintiff's family took her to a hospital and she was diagnosed with psychosis. Plaintiff was released after approximately one week and followed up with counseling. Noble approved paying Plaintiff her full salary during her medical leave. Plaintiff returned to work in late October 2009.

When Plaintiff returned to work, Noble asked Brooks to re-train Plaintiff as a result of work process changes that had been implemented during her absence. Brooks reported various deficiencies in Plaintiff's work to Noble. For example, Plaintiff was unable to generate reports using the Mine's procedures, she was not proficient in Excel, her data entry was incorrect and she reported incorrect information into the Auxiliary and Loader sheets. The Schedulers also reported negative feedback to Noble about Plaintiff's work performance. More errors were discovered in Plaintiff's WMPT entries. Despite multiple attempts to show Plaintiff how to properly report information, she continued making errors that rendered multiple reports inaccurate and caused co-workers to spend time correcting Plaintiff's errors.

On December 3, 2009, Noble placed Plaintiff on a Performance Improvement Plan ("PIP") identifying specific areas of Plaintiff's job performance needing improvement. The plan was explained to Plaintiff and she was warned that failure to show the required improvement could result in the termination of her employment. According to Noble, Plaintiff's work performance deficiencies continued while she was on the PIP, despite several meetings with Plaintiff to assess her progress and evaluate her performance. At the last meeting on February 11, 2010, Noble and the Human Resources Manager notified Plaintiff that her employment was terminated for failure to satisfy the PIP.

Immediately following her termination, Plaintiff sent an email to David Campbell, the Chief Executive Officer of Luminant, complaining that she was treated unfairly "as a Black female" working at the Mine. Plaintiff's complaint was sent to Human Resources and investigated by Annette Underwood, Senior Employee Relations Specialist. Underwood interviewed Plaintiff the day after her employment was terminated. Plaintiff alleged that co-workers called her names after

she reported the July 2009 gun comment and that she heard someone say "rat" outside her office, which she assumed was directed at her. She further alleged that she found a dead rat in a storage room and that someone drew crosses on whiteboards in the office. Underwood interviewed the employees involved in Plaintiff's allegations and concluded that there was no race-related conduct. Plaintiff filed a Charge of Discrimination with the EEOC alleging that she was discriminated against because of her race and a disability. The EEOC was unable to conclude that the information obtained established a violation of the statutes and the charge was dismissed.

*Summary Judgment Standard*

Rule 56(c) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

*Discussion and Analysis*

Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. S 2000e-2(a)(1). There are

essentially two theories of liability for discrimination under Title VII: disparate impact and disparate treatment. In the present case, Plaintiff alleges disparate treatment. Under the disparate treatment theory, Title VII is violated if the employee can show that the employer intentionally treated the employee unfairly because of race, color, religion, sex, or national origin. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1523 (5th Cir.1993).

The so-called McDonnell-Douglas framework, espoused in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973), is used when evaluating Title VII discrimination cases that are based on circumstantial evidence. Accordingly, the initial burden is on the plaintiff to show facts sufficient to warrant recovery. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir.1993). To succeed, a plaintiff proceeding on a disparate treatment theory of employment discrimination must show both disparate treatment and discriminatory motive. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir.1988); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 962 (5th Cir.1981). Discriminatory motive or intent may be shown by direct or circumstantial evidence. *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1150 (5th Cir.1982). The plaintiff must show that the protected trait – in this case, Plaintiff's race – actually motivated the employer's decision. The protected trait must have actually played a role in the decision-making process and must have had a determinative influence on the outcome. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993).

To defeat a motion for summary judgment, a Title VII plaintiff has the burden of making a *prima facie* showing that:

1. she belongs to a protected class;

2. she was qualified for the position;

> 3. despite her qualifications, her employment was terminated or she was not promoted; and
>
> 4. either the position was filled by someone outside that protected class, or that she was not promoted because of her race.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981); *Pratt v. City of Houston, Texas*, 247 F.3d 601, 606 (5th Cir.2001), *cert. denied*, 540 U.S. 1005, 124 S.Ct. 543 (2003).

If a plaintiff succeeds in showing facts sufficient to warrant recovery, a rebuttable presumption, or inference, arises. *Armstrong*, 997 F.2d at 65. The burden is then on the employer to come forward and show legitimate, nondiscriminatory reasons for the challenged acts. *Id.* At this step, the employer must produce evidence that, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742 (1993) (emphasis in original). If the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden then shifts back to the plaintiff to prove that the reasons put forth by the employer are a mere pretext – or phony reason – for accomplishing the discriminatory act. *Id. at 507-508*; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). The ultimate burden of persuading the court that he was a victim of intentional discrimination, however, always remains on the plaintiff. *Armstrong*, 997 F.2d at 65. "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002).

In this case, there is no dispute that Plaintiff belongs to a protected class. Plaintiff cannot establish a *prima facie* case concerning the promotion she did not receive, however, because she did

not apply for the position. In addition, the position was a lateral move and not a promotion. With regard to the termination of her employment, there does not appear to be a dispute as to whether Plaintiff was qualified when hired for her position, whether her employment was terminated or whether her position was filled by someone outside of the protected class. Establishing a *prima facie* case requires only a very minimal showing. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (*citing Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985)). As stated above, fact questions in the context of a motion for summary judgment are considered with deference to the nonmovant. *Reid,* 784 F.2d at 578. Although Plaintiff did not respond to the motion for summary judgment, viewing the facts in the light most favorable to the nonmovant, the Court assumes, *arguendo*, that Plaintiff has met the minimal showing required to establish a *prima facie* case of discrimination.

      Defendant must now come forward with a legitimate, non-discriminatory reason for the adverse employment action. Through the production of admissible evidence, Defendant must set forth reasons which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the termination of Plaintiff's employment. *Burdine*, 450 U.S. at 254-55. At this point in the analysis, the question is simply whether a defendant has produced such evidence – not whether that evidence is persuasive or credible. *Hicks*, 509 U.S. 502 at 510-11, 113 S.Ct. at 2749.

      Defendant has produced competent summary judgment evidence showing that Plaintiff's employment was terminated as a result of deficient work performance. Having articulated and produced evidence of legitimate, nondiscriminatory reasons for terminating Plaintiff's employment, the burden now shifts back to Plaintiff to show that the stated reasons are merely pretext.

Plaintiff, who at all times bears the ultimate burden of persuasion, must prove that she was intentionally discriminated against because of her race. *Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478 (1983); *Burdine,* 450 U.S. at 256. For summary judgment purposes, the issue is whether a genuine issue of material fact exists as to whether the Defendant intentionally discriminated against Plaintiff. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444 (5th Cir.1996); *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir.1993). A plaintiff must present evidence that will permit a rational factfinder to infer intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000).

Plaintiff has not responded to the motion for summary judgment. She has not come forward with evidence showing racial animus in the decision to terminate her employment. Plaintiff has not presented evidence from which a rational factfinder could infer intentional discrimination. *Reeves,* 530 U.S. at 120. Plaintiff has not shown a genuine issue of material fact as to whether the stated reason was pretextual.

In addition to her complaints that her employment was terminated and that she did not receive a promotion, Plaintiff complains that she was treated differently in that she did not receive as much training or pay as a white administrative assistant. To prove discrimination, a plaintiff may use circumstantial evidence that she has been treated differently than similarly situated employees outside of the protected class. See *Polano v. City of Austin, Texas*, 78 F.3d 968, 977 (5th Cir.1996). A plaintiff must show that she was treated differently under circumstances that were "nearly identical" to hers. See *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995). Plaintiff has not come forward with evidence that she was treated differently than a white employee under "nearly identical" circumstances. Plaintiff was hired for a newly created Administrative Assistant

position where there was no incumbent employee to train her. The employee Plaintiff compares her training with – Brooks – was hired as the second Administrative Assistant. As the first Administrative Assistant, Plaintiff was asked to train Brooks. Moreover, Defendant's summary judgment evidence shows that Plaintiff's salary was higher than Brooks as a result of a merit pay increase received by Plaintiff. Plaintiff has not come forward with any evidence to support her allegation that she was treated any differently than similarly situated employees seeking medical leave. Indeed, her supervisor exercised his discretion to pay Plaintiff's full salary during her leave of absence. Plaintiff has not shown that she was treated differently than similarly situated employees outside of her protected class.

Finally, Defendant seeks summary judgment on Plaintiff's retaliation claim. Construing the complaint liberally, Plaintiff alleges that she was retaliated against for complaining about not receiving a promotion and for reporting misconduct by co-workers. To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 331 (5th Cir.2009). While not limited to ultimate employment decisions, "[t]he antiretaliation provisions protect an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2414 (2006). To be an adverse employment action for purposes of establishing retaliation, the action must be "materially adverse." *Id.* at 68, 126 S.Ct. at 2415. A plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination." *Id.* "[P]etty slights or minor annoyances that often take place at work and that all employees experience," which may include personality conflicts and "snubbing," are not actionable. *Id.*

As a matter of law, even if the Court assumes that Plaintiff engaged in a protected activity, her allegations that co-workers treated her differently after she complained about not receiving a promotion and after she complained about a foreman allegedly making a comment about guns or other co-workers discussing hunting near her work space do not state materially adverse employment actions and are not actionable retaliatory conduct. *See Stewart*, 586 F.3d at 332 (*citing White*, 548 U.S. at 68, 126 S.Ct. at 2415). Plaintiff has not shown a genuine issue of material fact concerning her retaliation claim and Defendant is entitled to judgment as a matter of law.

Having carefully considered the evidence, the Court finds that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. It is accordingly

**ORDERED** that Defendants' Motion for Summary Judgment (document #111) is **GRANTED**. The complaint is **DISMISSED** with prejudice. All motions not previously ruled on are **DENIED**. It is further

**ORDERED** that the Bench Trial scheduled for June 21, 2011 is **CANCELED**.

So **ORDERED** and **SIGNED** this **31** day of **May, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE